**FILED**

**October 7, 2016**

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 12:35 PM



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| **Jamal Darraj,** | ) Docket No.: 2015-01-0339 |
| **Employee,** | ) |
| | ) State File No.: 55851 2015 |
| **v.** | ) |
| | ) Judge Audrey A. Headrick |
| **McKee Foods,** | ) |
| **Employer.** | ) |
| | ) |

---

## COMPENSATION HEARING ORDER

---

This matter came before the undersigned Workers' Compensation Judge on September 15, 2016, for a Compensation Hearing, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The primary legal issue is whether Mr. Darraj sustained a compensable injury.[1] If so, then the question turns to the extent of entitlement to medical and temporary disability benefits. For the reasons set forth below, this Court finds Mr. Darraj did not establish by a preponderance of the evidence that he sustained a compensable injury.

### History of Claim

This case involves an incident that occurred on July 19, 2015, when Mr. Darraj experienced pain in his hands and forearms while feeding cardboard into a hopper. Mr. Darraj is a 59-years-old resident of Catoosa County, Georgia. He completed high school. The parties agreed that Mr. Darraj provided proper, statutory notice of the alleged injury and that he selected Dr. Marshall Jemison from a panel of physicians. However, Mr. Darraj testified he initially treated with Dr. McKinley Lundy, authorized by McKee Foods, since Dr. Jemison was on vacation. The Referral to Physician form completed by McKee Foods' nurse stated that Mr. Darraj had complained of "gradual onset bilateral wrist pain intermittent past 2 months [illegible] worsen on 07/19/15 extreme burning and

---

[1] A complete listing of the technical record, stipulations, and exhibits admitted at the Compensation Hearing is attached to this Order as an appendix.

pain."[2]  (Ex. 1.)

When Mr. Darraj saw Dr. Lundy on July 21, 2015, he gave a history of having "to constantly bend boxes for around 1 ½ hours on the evening of 7/19/15." *Id.*  He told Dr. Lundy he worked for McKee Foods for eleven years and worked as a machine operator for the past five to six years. *Id.*  Although Mr. Darraj acknowledged having right carpal tunnel surgery in the 1980s, he denied having any problems with his wrists until several months prior to July 19, 2015. *Id.*  Dr. Lundy diagnosed bilateral wrist sprain and forearm strain.  He ordered physical therapy and released him to return to work with restrictions. *Id.*  On the bottom half of the Referral to Physician form completed by Dr. Lundy, he checked "yes" next to the box asking if it was work-related.

Mr. Darraj saw Dr. Marshall Jemison, his chosen panel physician, on July 30, 2015.  (Ex. 2; Ex. 9.)  He provided a similar history and complained of significant bilateral wrist pain that began on July 19, 2015, but had been present for some time. *Id.*  Mr. Darraj stated "[t]here was no injury at that time but he was doing more with his hands and wrist when he began having pain at the thumbs and at the radial aspect of the wrist with some swelling." *Id.*  After examining Mr. Darraj and taking x-rays of both hands, Dr. Jemison listed several conditions under "Impression."  Dr. Jemison diagnosed Mr. Darraj with the following: "1) Osteoarthritis, pantrapezial at both thumbs, right worse than left. 2) Right wrist radiocarpal arthritis.  3) Left long trigger."  Dr. Jemison addressed causation.  He opined:

> I do not believe that these conditions are primarily related to his work activities as there was no injury and his arthritis is very significant.  I have discussed this with him in detail including a brief summary of Tennessee Workers' Compensation Laws.  He is not in agreement about the work relatedness of this condition, so he may want to seek another opinion.

*Id.*

Dr. Jemison completed a Standard Form Medical Report.  (Ex. 11.)  In the Standard Form Medical Report, Dr. Jemison stated Mr. Darraj did not suffer any temporary total disability because of the July 19, 2015, incident. *Id.* at 4.  Considering Mr. Darraj's medical history, diagnosis and treatment, and all other available information regarding the onset and causes of his injury, Dr. Jemison stated Mr. Darra's injury more

---

[2] The Court notes that Mr. and Mrs. Darraj both referenced the fact, either in their testimony and/or in pleadings filed, that English is not Mr. Darraj's first language.  The clear implication in statements made by the Darrajs was that Mr. Darraj was perhaps disadvantaged by not having an interpreter present during his deposition and the compensation hearing.  However, on the new patient form signed by Mr. Darraj, he wrote that English is the primary language spoken at home.  Further, pursuant to Rule 3.02 of Court of Workers' Compensation Claims Practices and Procedures (2015), it is the parties' responsibility to retain an interpreter approved by the Court.

likely than not, as opposed to speculation or possibility, did not arise primarily out of and in the course and scope of his employment. *Id.* Dr. Jemison assigned no permanent medical impairment attributable to the incident on July 19, 2015. *Id.* Furthermore, Dr. Jemison specifically opined in a handwritten note on the Standard Form Medical Report, "No injury. Just arthritis." *Id.*

Since Mr. Darraj disagreed with Dr. Jemison's opinion, he consulted with Dr. Joseph L. Burton, a forensic pathologist. In an undated "To Whom it May Concern" letter, Dr. Burton stated he "extensively interviewed Mr. Darraj at my office in Alpharetta, Georgia on August 8, 2015." (Ex. 5.) Dr. Burton opined, "[Mr. Darraj's] symptoms clearly date to a specific event in which the carton former was not working properly." *Id.* Dr. Burton opined, "[t]here is absolutely no doubt that Mr. Darraj's current debility is associated with his assembly line work and specifically by an event occurring July 19, 2015 that precipitated the acute onset of increased pain and symptoms." *Id.* He acknowledged that, "[a]lthough I am not a treating physician in Mr. Darraj's case, I am a trained medical doctor whose specialty is pathology which is the study of how disease and trauma effect [sic] our bodies."[3] *Id.*

After his one-time consultation with Dr. Burton, Mr. Darraj treated with Dr. Edward H. Holliger, an orthopedic surgeon in Kennesaw, Georgia. Under a section entitled "IMP," Dr. Holliger noted, "[p]ain in wrists, asymptomatic prior to 07/19/2015. Prior to an event where he had to use his hands in a different way than usual due to a malfunctioning machine at work." (Ex. 3.) After examining Mr. Darraj and reviewing x-rays taken, Dr. Holliger opined as follows:

> I believe at this point [Mr. Darraj] has significant bilateral wrist problems, osteoarthritis on the right at the radiocarpal joint as well as thumb CMC-1 osteoarthritis and left thumb CMC-1 osteoarthritis. Asymptomatic prior to the work injury, but 11 years of repetitive work doing the same kind of activity. I believe his problem is work-related and the majority of his problems can be traced not only to his work activities but the additional event on 07/19/2015. . . . Lastly, I have reviewed the information from Dr. Joseph Burton. Dr. Burton is an expert in connecting injuries with events and exposures. He is nationally renowned in this arena and in his opinion, there is no doubt that [Mr. Darraj's] current disability is associated with assembly line work and then additionally the events of July 19th and I am inclined based on his training and expertise and in working with patients who have similar symptoms, that I have no reason not to agree with Dr. Burton.

---

[3] Dr. Burton's website credentials attached to his Form C-32 indicate that his past medical career before retiring primarily consisted of working as the chief medical examiner and senior consulting pathologist for various counties. Since 2000, Dr. Burton has worked as a consultant in forensic and environmental pathology and medicine where his primary practice appears focused on motor vehicle crashes.

*Id.* Dr. Holliger placed Mr. Darraj on restricted duty.

Mr. Darraj continued to treat with Dr. Holliger regarding his bilateral wrist complaints. On December 14, 2015, Dr. Holliger opined, "[b]ilateral hand pain and problems, work-related. [Mr. Darraj] has problems that are greater than 50% attributable to his work and work activities over the last many years." *Id.* After noting that Mr. Darraj did not want to proceed with surgery, Dr. Holliger placed him at maximum medical improvement (MMI) on March 10, 2016. *Id.*

Dr. John A. Gracy, a board certified orthopedic surgeon, performed a medical records review on behalf of McKee Foods and completed a Standard Form Medical Report. (Ex. 12.) He reviewed the medical records of Drs. Lundy, Jemison, Burton, and Holliger, including paper copies of Dr. Jemison's x-rays. *Id.* In a Standard Form Medical Report, Dr. Gracy found Mr. Darraj suffered no temporary total disability because of the July 19, 2015, incident. *Id.* at 4. Further, considering Mr. Darraj's medical history, diagnosis and treatment, and all other available information regarding the onset and causes of his injury, Dr. Gracy opined it is more likely than not, as opposed to speculation or possibility, that Mr. Darraj's injury did not arise primarily out of and in the course and scope of his employment. *Id.* Dr. Gracy assigned no permanent medical impairment attributable to the incident on July 19, 2015. *Id.*

Drs. Holliger and Burton also completed Standard Form Medical Reports. (Ex. 3; Ex. 5) However, contrary to the requirements of the Standard Form Medical Report, neither physician completed page four. *Id.* Instead, both Drs. Holliger and Burton omitted the page. *Id.* Page four specifically applies to injuries that occur on or after July 1, 2014, and it contains the applicable definition of causation for post-July 1, 2014 injuries set forth by Tennessee Code Annotated section 50-6-102 (2015). The causation opinions given by Drs. Holliger and Burton provided on page three are in accord with the pre-July 1, 2014 causation standard.

Mr. Darraj filed an Amended Petition for Benefit Determination on August 9, 2016, seeking temporary disability benefits, medical benefits, and permanent disability benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on September 9, 2016. This Court conducted the Compensation Hearing on September 15, 2016.

At the Compensation Hearing, Mr. Darraj asserted he sustained either an injury or aggravation of his pre-existing arthritis to his hands, wrists, and forearms arising primarily out of and in the course and scope of his employment with McKee Foods. He relied upon the opinions of Drs. Burton and Holliger. Mr. Darraj argued Dr. Jemison's opinion cannot be presumed correct because he diagnosed him with a sprain and traumatic arthritis, which are injuries caused by cumulative trauma. He also argued Dr.

Gracy's opinion should not be considered because Dr. Gracy never saw him, and he based his opinion on Dr. Jemison's medical records without considering either the opinions given by Drs. Burton and Holliger or Mr. Darraj's job description.

McKee Foods countered Mr. Darraj failed to demonstrate by a preponderance of the evidence that his employment contributed more than fifty percent in causing the injury, considering all causes. Specifically, McKee Foods argued that Dr. Jemison's opinion, as the panel physician, was not rebutted by a preponderance of the evidence. It pointed out that Dr. Jemison's opinion was consistent with the causation standard set forth in Tennessee Code Annotated section 50-6-102(14) (2015) for post-July 1, 2014 injuries. McKee Foods argued the opinions given by Drs. Burton and Holliger do not satisfy the standard set forth in Tennessee Code Annotated section 50-6-102(14) (2015), and both physicians excluded page four, which is required by Standard Form Medical Reports. Additionally, McKee Foods pointed out that Dr. Burton's background was as a county medical examiner in Georgia, and he now acts as an expert witness primarily in automobile accident cases.

## Findings of Fact and Conclusions of Law

In this case, the Court will not construe the Workers' Compensation Law remedially or liberally in favor of either party but shall construe it fairly, impartially and in accordance with basic principles of statutory construction favoring neither Mr. Darraj nor McKee Foods. At the Compensation Hearing, Mr. Darraj has the burden of proving all essential elements of his claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

For his injury to be compensable, Mr. Darraj must show it arose primarily out of and in the course and scope of employment and be identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(14)(A) (2015). The parties stipulated that Mr. Darraj provided proper notice of his injury to McKee Foods, that his claim is not barred by the statute of limitations, and that an employment agreement existed between the parties. The primary disputed issue is compensability.

Mr. Darraj must show, to a reasonable degree of medical certainty, that his injury arose "primarily out of and in the course and scope" of his employment with McKee Foods by proving by "a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(14)(B) (2015). The legislature defined "[s]hown to a reasonable degree of medical certainty" to mean the physician must opine "it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2015). Likewise, an aggravation of a pre-existing condition is

compensable only if "it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A) (2015). Further, as the panel physician, Dr. Jemison's opinion regarding causation "shall be presumed correct but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(14)(E) (2015).

With these legal principles in mind, the Court must consider whether the medical proof presented by Mr. Darraj rebuts the presumption of correctness held by Dr. Jemison. Here, neither Dr. Burton nor Dr. Holliger completed page four of the Standard Form Medical Report, which specifically addresses the correct legal standard for compensability of injuries occurring on or after July 1, 2014. As set forth in Tennessee Code Annotated section 50-6-235(c)(1) (2015), the Standard Form Medical Report is the equivalent of direct testimony from a physician in lieu of a deposition. Conversely, Dr. Jemison completed a Standard Form Medical Report, including page four, and denied that Mr. Darraj's injury arose primarily out of and in the course and scope of his employment. (Ex. 11 at 4.) He further clarified in a handwritten note, "No injury. Just arthritis." *Id.* Therefore, the Court holds that Mr. Darraj failed to present sufficient evidence to overcome the presumption of correctness given to Dr. Jemison's opinion on causation.

Accordingly, after careful consideration of the evidence as a whole, this Court concludes Mr. Darraj failed to establish, by a preponderance of the evidence, his bilateral hand, wrist and forearm conditions arose primarily out of and in the course or scope of his employment with McKee Foods. In light of the Court's holding, Mr. Darraj's request for medical benefits, temporary disability benefits, and permanent disability benefits is denied.

This Court taxes the court costs to McKee Foods pursuant to Tennessee Compilation Rules and Regulations Rule 0800-02-21-.07 (2015). Further, McKee Foods shall prepare and submit a Statistical Data Form for this matter within ten calendar days of the date of judgment.

IT IS, THEREFORE, ORDERED that the claim of Mr. Darraj against McKee Foods or its workers' compensation carrier is denied.

IT IS SO ORDERED.

**ENTERED this the 7th day of October, 2016.**

_(signature)_

**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Compensation Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal."

2. File the completed form with the Court Clerk _within thirty calendar days_ of the date the Workers' Compensation Judge entered the Compensation Hearing Order.

3. Serve a copy of the Compensation Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The party filing the notice of appeal, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording

of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. Alternatively, the party filing the appeal may file a joint statement of the evidence within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the Workers' Compensation Judge before the record is submitted to the Clerk of the Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03 (2015).

6. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Workers' Compensation Appeals Board, the appeal will be docketed and assigned to an Appeals Board Judge for review. At that time, a docketing notice shall be sent to the parties. Thereafter, the party who filed the notice of appeal shall have fifteen calendar days after the issuance of the docketing notice to submit a brief to the Appeals Board for consideration. Any opposing party shall have fifteen calendar days after the filing of the appellant's brief to file a brief in response. No reply briefs shall be filed. Briefs shall comply with the Practice and Procedure Guidelines of the Workers' Compensation Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03(6) (2015).

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, this Order will become final by operation of law thirty calendar days after entry pursuant to Tennessee Code Annotated section 50-6-239(c)(7) (2015).**

# APPENDIX

Technical record:

1. Petition for Benefit Determination, filed October 12, 2015;
2. Dispute Certification Notice, filed November 10, 2015;
3. Request for Expedited Hearing and Affidavit, filed December 18, 2015;
4. Notice of Expedited Hearing, filed December 22, 2015;
5. Employer's Response to Request for Expedited Hearing Regarding Temporary Disability and Medical Benefits, filed December 23, 2015;
6. Order Granting Continuance, entered February 4, 2016;
7. Motion Requesting Withdrawal of Request for Expedited Hearing, filed February 29, 2015;
8. Request for Initial Hearing, filed February 29, 2015;
9. Order Granting Motion to Withdraw Request for Expedited Hearing, entered March 4, 2016;
10. Notice of Initial Hearing, filed April 28, 2016;
11. Initial Hearing Order, entered May 19, 2016;
12. Motion to Compel, filed June 17, 2016;
13. Response of McKee Foods Corp. to Employee's Motion to Compel, filed June 17, 2016;
14. Motion to Quash Subpoenas, filed June 22, 2016;
15. Response of McKee Foods Corporation to Employee's Motion to Quash Subpoenas, filed June 22, 2016;
16. Order Denying Motion to Compel and Motion to Quash Subpoenas, filed June 30, 2016;
17. Notice of Intent, filed August 1, 2016;
18. Notice of Filing Certified Medical Records & Statement Concerning Up-to-Date Medical Records, filed August 1, 2016;
19. Statement of Medical Records, filed August 1, 2016;
20. Request for Extension, filed August 1, 2016;
21. Response of McKee foods Corporation to Employee's Request for Extension, filed August 10, 2016;
22. Notice of Filing Statement of Unresolved Evidentiary Disputes, filed August 15, 2016;
23. Order Denying Request for Extension, entered August 15, 2016;
24. Notice of Intent to Utilize Standard Form Medical Report for Industrial Injuries of D. Marshall Jemison, M.D., filed August 16, 2016;
25. Notice of Intent to Utilize Standard Form Medical Report for Industrial Injuries of John A. Gracy, M.D., filed August 16, 2016;
26. McKee Foods Corporation's List of Witnesses and Exhibits, filed August 17, 2016;
27. Motion for Discovery, filed August 29, 2016;

28. Employer's Response to Motion for Discovery and Employer's Motion for Sanctions, filed August 29, 2016;
29. Rebuttal to Mr. Quinn's Response to Motion for Discovery, filed August 30, 2016;
30. Inclusion for Dispute Certification Notice, filed August 30, 2016;
31. Amended Petition for Benefit Determination, filed September 1, 2016;
32. Pre-Compensation Hearing Statement, filed September 1, 2016;
33. Pre-Compensation Hearing Statement, filed September 1, 2016;
34. Order Denying Motion for Discovery, entered September 8, 2016;
35. Dispute Certification Notice, filed September 9, 2016.

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Compensation Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Exhibits:

1. Medical records of Dr. McKinley Lundy (Bates stamped Darraj-Lundy-01 - Darraj-Lundy-07);
2. Medical records of Dr. Marshall Jemison (Bates stamped Darraj-Jemison-01 - Darraj-Jemison-10);
3. Medical records of Dr. Edward Holliger (Bates stamped Darraj-Holliger-01 - Darraj-Holliger-18) and Form C-32 Standard Form Medical Report of Dr. Holliger;
4. Form C-30A Final Medical Report of Dr. Holliger (For Identification Purposes);
5. Medical records of Dr. Joseph Burton (Bates stamped Darraj-Burton-01 - Darraj-Burton-04) and Form C-32 Standard Form Medical Report of Dr. Burton;
6. Form C-30A Final Medical Report of Dr. Burton (For Identification Purposes);
7. Packaging Operator Job description;
8. McKee Foods' View Involved Party;
9. Medical records of Dr. Marshall Jemison (Bates stamped MFC-HHC-001 - MFC-HHC-0004);
10. Medical records of Dr. John A. Gracy, M.D. MFC-TOS-0001 – MFC-TOS-0010;
11. Form C-32 Standard Form Medical Report of Dr. Marshall Jemison; and,
12. Form C-32 Standard Form Medical Report of Dr. John Gracy.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 7th day of October, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | E-Mail Address/ Mailing Address |
|------|----------------|------------------|---------|------------|-----------|--------------------------------|
| Mr. Jamal Darraj | X | | | | X | 656 Lee Drive Ringgold, GA 30736 martjamal2000@yahoo.com |
| Bart Quinn, Esq. | | | | | X | bquinn@chamblisslaw.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov